DocuSign Envelope ID: C3075853-884D-4A65-A516-476DB3ECDC07

Michael A. Taitelman, Esq. (CA SBN 156254)
Steven B.F. Stiglitz, Esq. (CA SBN 222667)
FREEDMAN + TAITELMAN, LLP
1901 Avenue of the Stars, Suite 500
Los Angeles, California 90067
Telephone: (310) 201-0005
Facsimile: (310) 201-0045
E-mail: mtaitelman@ftllp.com
         sstiglitz@ftllp.com

Attorneys for Plaintiff BM Real Estate Services, Inc. dba Priority Financial Network

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BM REAL ESTATE SERVICES, INC. DBA PRIORITY FINANCIAL NETWORK, a California corporation,<br><br>        Plaintiff,<br><br>    -vs-<br><br>ANGEL OAK MORTGAGE SOLUTIONS LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 2:20-cv-3974<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT**<br>**(2) PROMISSORY ESTOPPEL**<br>**(3) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>**(4) INTENTIONAL MISREPRESENTATION**<br>**(5) NEGLIGENT MISREPRESENTATION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff BM Real Estate Services, Inc. dba Priority Financial Network ("Priority Financial") as and for its complaint hereby alleges as follows against Defendant Angel Oak Mortgage Solutions LLC and DOES 1 through 10:

## INTRODUCTION

1.    Priority Financial is a mortgage banker with more than 20 years of experience funding loans for home purchases. To maximize the number of loans it can fund, Priority Financial partners with a number of larger financial institutions that

1 purchase the loans that Priority Financial originates. Defendant Angel Oak Mortgage Solutions LLC ("Angel Oak") is one of those partners. Pursuant to a Mortgage Loan Purchase and Sale Agreement dated as of May 30, 2019 (the "LPA"), Angel Oak agreed to purchase various home mortgages that Priority Financial originated. During the nine (9) months that the LPA has been in effect, Angel Oak has purchased numerous Priority Financial-originated mortgages, which have a total face value of more than $26 million. In each and every transaction, Angel Oak took the same steps leading to the closing of its purchase of mortgages from Priority Financial. Those steps are described in detail in Angel Oak's Seller Guide, and include sending a Conditional Loan Approval (which listed the exclusive conditions to closing) and then Clearing Conditions. Consistent with industry custom and practice and Angel Oak's own Seller Guide, once Priority Financial closes a loan for which Angel Oak Cleared Conditions, Angel Oak is committed to purchase the associated mortgage at the price previously agreed price as long as there are no material differences from the underwriting approval.

2. When the COVID-19 pandemic erupted and thereafter, Angel Oak repeatedly reaffirmed its commitment to purchase mortgage loans, including those at issue in this action, in mass emails to its loan originators, as well as specific emails to Priority Financial employees. For example, on March 19, 2020, at 2:09 p.m., Kevin McCarthy sent an email message to Anthony Vu of Priority Financial to state, "I am hearing we are going to honor current locks." Concurrently, Dan Bayer sent an email message to Pete Roeske at Priority Financial to state, more equivocally, "Please send me you your current rate locked pipeline with AO – I will do my best to honor everything." Despite those assurances, Angel Oak abandoned its obligations to Priority Financial and other similarly situated mortgage bankers, even as to loans for which Angel Oak already had Cleared Conditions and which Priority Financial already had funded by the beginning of March 2020. By lying and refusing to honor its obligations, Angel Oak distinguished itself from some other financial institutions

that kept their commitments to Priority Financial. In this action, Priority Financial seeks compensation for the losses that Angel Oak caused by its betrayal.

## THE PARTIES

3. Priority Financial is a California corporation with its principal place of business in the State of California.

4. On information and belief, Angel Oak is a Delaware limited liability company with its principal place of business located at 980 Hammond Drive, Suite 850 Atlanta, GA 30328. Further, on information and belief, Angel Oak is privately held, and owned by members that are individuals who reside in states other than California. In advance of filing this lawsuit, Priority Financial attempted to confirm with Angel Oak that its members all reside in states other than California, but Angel Oak did not respond.

5. Priority Financial is informed and believes, and on that basis alleges, that Defendants Does 1 through 10 (collectively "Doe Defendants"), inclusive, are corporations, companies, partnerships, proprietorships, unincorporated associations, and/or individuals whose identities and addresses are presently unknown to Priority Financial and are not presently capable of ascertainment. Priority Financial is informed and believes, and on that basis alleges, that the Doe Defendants at all times relative to this action were the agents, servants, partners, joint venturers and employees of Angel Oak and, in doing the acts alleged herein, were acting with the knowledge and consent of each of Angel Oak and the other Doe Defendants in this action. Plaintiff alleges on information and belief that there exists, and at all times herein mentioned existed, a unity of interest and ownership between Defendants, such that any individuality and separateness between them has ceased, and each are the alter ego of the other. Plaintiff alleges on information and belief that adherence to the fiction of the separate existence of any Defendant as an entity distinct from any other would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that the parties reside in different states and in that Priority Financial seeks far more than the $75,000 minimum for diversity jurisdiction.

7. This Court has personal jurisdiction over Angel Oak in that Angel Oak conducts business in this judicial district and three of the five mortgage loans at issue relate to residential real property in California.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the causes of action occurred in this judicial district.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

9. On or about May 30, 2019, Angel Oak and Priority Financial entered into the LPA. Pursuant to the LPA, Angel Oak agreed to purchase certain home mortgages from Priority Financial.

10. Section 6.01 of the LPA, captioned, "Closing," provides, in relevant part:

> Each closing shall be subject to each of the following conditions:
>
> (a) No breach or default exists under this Agreement;
> (b) The Purchaser and the Seller shall have received, or the Purchaser's and the Seller's attorneys shall have received in escrow, all Closing Documents, duly executed
> (c) The Seller shall not have experienced any Material Adverse Change. For the purposes of this Section 6.01, "Material Adverse Change" shall mean, (i) a material adverse change in, or a material adverse effect upon, the operations, business, properties, condition (financial or

> otherwise) or prospects of the Seller; (ii) a material impairment of the ability of the Seller to perform under this Agreement or any related agreements (the "Operative Agreements"); or (iii) a material adverse effect upon the legality, validity, binding effect or enforceability of any Operative Agreement against the Seller; and
>
> (d) All other terms and conditions of this Agreement shall have been complied with.
>
> **Subject to the foregoing conditions, the Purchaser shall pay to the Seller on the applicable Closing Date, the Purchase Price for the Mortgage Loans** in the related Mortgage Loan Package pursuant to Section 3.01 of this Agreement, and the Seller shall deliver the Mortgage Loans to the Purchaser.  (Emphasis added.)

11. Angel Oak also issued Priority Financial a copy of its Seller Guide, which lists procedures for correspondents, like Priority Financial, to sell mortgage loans to Angel Oak.  Section 9 of the Seller Guide, entitled "Non-Delegated Correspondent Lending" describes the relationship between Priority Financial and Angel Oak with respect to the five (5) mortgage loans at issue in this action from the inception of underwriting through Priority Financial's funding of the mortgage loan and submission for Purchase Review.  In addition, pursuant to Section 5 of the Seller Guide, entitled "Loan Funding," once the Mortgage File has been submitted for Purchase Review, Angel Oak commits to schedule a Purchase Review, and, if it does not find discrepancies, then Angel Oak commits to funding the purchase.

12. Over the course of the first nine (9) months of the term of the LPA, Angel Oak purchased numerous home mortgages from Priority Financial, with a total

face value of more than $26 million.  During that nine (9) month period, Angel Oak and Priority Financial established a course of dealing, which was consistent with the LPA and the Seller Guide.

13.   In the parties' course of dealing, and as is set forth in the LPA and the Seller Guide, Angel Oak required Priority Financial to engage in, and complete, a rigorous underwriting process prior to funding a loan.  Until March 2020, once a loan Cleared Conditions (meaning that Angel Oak issued a Conditional Approval form that did not include any items under the section entitled Client to Provide) and Priority Financial lent the funds to its customer, Angel Oak purchased all such loans from Priority Financial at the previously agreed price, without exception.  This included instances when prevailing market interest rates increased materially from the time of the interest rate lock to the closing, which supports Priority Financial's position that Angel Oak assumed the risk of deteriorating economic circumstances.

14.   In the case of the five (5) mortgage loans at issue, Priority Financial followed all the normal procedures.  Section 9 of the Seller Guide (referenced above), has six subsections, labeled 9.1 through 9.6, each corresponding to a step in the loan approval and funding process.  Priority Financial completed 9.1 (Submitting Loans for Review), 9.2 (Conditional Approval), and 9.3 (Clearing Conditions).  Subsections 9.4 (State Eligibility) and 9.5 (Scenario & Guideline Exceptions) were not applicable.  As such, Priority Financial had performed all obligations required to arrive at Subsection 9.6 (Submitting for Purchase).  Priority Financial then submitted the Mortgage Files to Angel Oak for purchase review in accordance with Subsection 9.6.

15.   Next, pursuant to Section 5 of the Seller Guide, entitled "Loan Funding," Angel Oak was obligated to schedule a Purchase Review.  To date, Angel Oak has never identified any material differences found from the Angel Oak underwriting approval and the closed loan submission.  As such, the next step in the process – according to Angel Oak's own Seller Guide – is that Correspondent Lenders [here, Priority Financial] **will receive** an email notification to include the Funding

Schedule/Purchase Advice for execution. Then, "[u]pon receipt of the executed Purchase Advice, Angel Oak **will wire funds** to the Correspondent Lender . . . ." (Seller Guide, Section 5.3 at 7 (emphasis added). In sum, Angel Oak had no discretion to reject the five (5) mortgage loans that Priority Financial submitted for purchase because Priority Financial completed the entire prescribed process.

16. In March 2020, after the COVID-19 pandemic impacted mortgage markets, Angel Oak abruptly changed this course of dealing by refusing to purchase five (5) loans that Priority Financial funded in March 2020 (after receiving Conditional Approval forms with no items in the "Client to Provide" section). The following chart summarizes the five loans at issue that Angel Oak has failed to purchase:

| Borrower [1] | Angel Oak Loan Number | Amount of Loan | Date Loan Funded | Date of Conditional Underwriting Approval | Total Price | Amount Due |
|---|---|---|---|---|---|---|
| Client 1 | 992002139289 | $2,640,000 | 3/2/2020 | 2/28/2020 | 102.500 | $2,706,000 |
| Client 2 | 992001137447 | $1,232,000 | 3/9/2020 | 3/6/2020 | 101.500 | $1,250,480 |
| Client 3 | 992002139847 | $2,500,000 | 3/9/2020 | Note [2] | 102.500 | $2,562,500 |
| Client 4 | 992002139427 | $552,000 | 3/16/2020 | 3/5/2020 | 103.000 | $568,560 |
| Client 5 | 992002139814 | $1,314,000 | 3/19/2020 | 3/9/3030 | 103.000 | $1,353,420 |

---

[1] The names of the Borrowers are not listed here to protect their privacy.

[2] Priority Financial underwrote this loan in Hawaii at Angel Oak's request after Angel Oak's Pre-Purchase Review.

17. As to each of these loans, an Angel Oak representative informed Priority Financial that the loan Cleared Conditions prior to Priority Financial closing the loan. In other words, the steps from Section 9.1 through 9.3 of the Seller Guide took place (and, as set forth above, Sections 9.4 and 9.5 are inapplicable). Priority Financial then submitted the loan for Purchase Review in accordance with Section 9.6, but, as set forth below, Angel Oak failed to perform its obligations thereafter.

18. On March 25, 2020, at 2:58 p.m., Brent Houston (of Priority Financial's affiliate AltLoan) wrote to Mike Fierman and two other Angel Oak representatives to respond to a message that Angel Oak had stopped funding loans. Mr. Houston stated, in relevant part: "Per our earlier message, please advise us on where we are regarding those loans previously CTC [clear to close],[3] funded and delivered to your group. We have other investors still honoring locked, funded and delivered loans. Your group had previously committed to honor all locks with CTC'ed and funded on our warehouse line." (Emphasis added). Mr. Fierman responded, "Confirmed. They are not doing any non [Qualified Mortgages]." Notably, Mr. Fierman did not deny the fact that his team had provided assurances that Angel Oak would purchase locked, funded and delivered loans. Priority Financial's CEO Marc Shenkman then responded to the same e-mail chain, "Thank you for confirming that. I really want to know if you intend to purchase the loans on our warehouse line. We are willing to work with you but at this point we have no guidance or communication about your intentions. Right now we have 5 loans totaling $8,238,000 that are sitting on our warehouse line. All of these loans were given a clear to close prior to us funding." Once again, Mr. Fierman did not deny the allegation that the loans were "given a clear to close" or that his group had "committed to honor all locks with CTC'd and funded." Instead, Mr. Fierman referred only to changed circumstances that supposedly excused Angel Oak's failure to perform, stating, in relevant part, "If I can survive this week I will do my best to

---

[3] The term "clear to close" is term of general industry applicability that, for purposes of the communication referenced above, is equivalent to the term Clearing Conditions in the Seller Guide.

8
COMPLAINT

work with you. As you know, the market has collapsed virtually over night." This correspondence all confirms that Angel Oak has broken its promises and breached the LPA.

19. Based on the LPA, industry norms, and the parties' course of dealing, Angel Oak's representations set forth above that the mortgage loans "Cleared Conditions" signified that Angel Oak would purchase each of the five (5) mortgages at issue at the previously agreed price upon Priority Financial funding each loan and upon receipt of the appropriate executed paperwork, assuming there were no discrepancies (which there were not). More specifically, Angel Oak had no discretion to reject the loan because Priority Financial was delivering funded loans on a non-delegated basis, and Angel Oak therefore had the sole discretion to approve to disapprove the credit risk prior to Priority Financial funding the loan. Mortgage lenders like Priority Financial choose non-delegated lender and therefore pay a higher delivery fee and obtain worse pricing specifically for the purpose of eliminating loan sale risk. Angel Oak is falsely treating the relationship as one involving a delegated lender, which is not applicable.

20. Despite the foregoing contractual obligations and material representations, Angel Oak has failed to purchase five mortgage loans, totaling $8,238,000, that Priority Financial originated, that Angel Oak cleared to close, and that Priority Financial funded pursuant to the LPA. Here, the Purchase Price for the five (5) home mortgages at issue collectively totals to $8,440,960.

21. Angel Oak informed Priority Financial of this decision on or about March 23, 2020, which was weeks after Angel Oak completed Clearing Conditions and weeks after Priority Financial funded the loans. Angel Oak's position at the time was that it would not purchase the five (5) home mortgages at issue because of the change in economic circumstances caused by the COVID-19 pandemic.

22. Angel Oak has never taken the position that the Mortgage File for any of the five (5) loans in dispute was defective in any way.

23. In refusing to purchase the five (5) home mortgages at issue, Angel Oak cited Section 2.01 of the LPA captioned "Loan Sale." That section provides, in part: "The Seller agrees to sell and the Purchaser agrees to purchase on each Closing Date pursuant to this Agreement the Mortgage Loan(s) being sold by Seller as listed on each Assignment and Conveyance Agreement."

24. As an initial matter, the Assignment and Conveyance Agreement is not discussed in Angel Oak's own Seller Guide, revealing that its issuance is not a required step in the process.

25. Even more important, Angel Oak's excuse twists the meaning of the LPA when it suggests that Angel Oak could not incur liability for failure to purchase a Mortgage Loan merely because the Mortgage Loan was not listed on the Assignment and Conveyance Agreement. Importantly, Section 6.01 of the LPA, captioned "Closing," lists the conditions for closing, and does not list delivery of an Assignment and Conveyance Agreement as one of the conditions. Prior to listing those closing conditions, Section 6.01 of the LPA merely states that the Closing shall take place on the Closing Date listed in the Assignment and Conveyance Agreement. In other words, the LPA recognizes that the Assignment and Conveyance Agreement is a mere formality, not a document that is essential to the existence of an agreement by Angel Oak to purchase a Mortgage Loan. The Assignment and Conveyance Agreement is a boilerplate document that Angel Oak prepares to incorporate information from the Mortgage File and the previously-agreed price. The Assignment and Conveyance Agreement has to be issued after the loan funds only because it sets the precise purchase price that includes per diem interest (which cannot be known until the loan has funded), not because it reflects any new developments or negotiations from the underwriting process.

26. Despite this straightforward process, Angel Oak is now contending that it has no obligation to purchase the five (5) home mortgages at issue because *Angel Oak* chose not to issue an Assignment and Conveyance Agreement for any of those

mortgages. In that twisted version, Angel Oak would be able to avoid purchasing a mortgage that it rigorously underwrote and agreed to purchase at a previously-set price simply because Angel Oak chose not to issue boilerplate paperwork for Priority Financial to execute.

27. Simply put, the LPA does not provide Angel Oak with any discretion to accept or reject a loan once Angel Oak completes Clearing Conditions for the loan to close and Priority Financial provides the required documentation relating to its loan to the Borrower. Further, in the case of each of the five loans at issue, Angel Oak did, in fact, clear conditions for the loan to close, and Priority Financial did, in fact, fund the loan in reliance thereon, and Priority Financial did, in fact, provide the required documentation to Angel Oak.

28. Priority Financial tapped its warehouse line of credit to fund the five (5) home mortgage loans at issue. This line of credit requires Priority Financial to repay the amounts it borrowed within 45 days. To satisfy its commitment to its warehouse lender, and solely as a result of Angel Oak's unlawful refusal to purchase the five (5) home mortgage loans at issue, Priority Financial likely will be forced to sell these home mortgages at prevailing market rates, which almost certainly will entail a substantial discount to the purchase price set forth in the Lock Commitment.

29. In addition, as a direct and proximate result of Angel Oak's conduct, Priority Financial is informed and believes, and thereon alleges, that, Priority Financial will suffer harm to its credit, including its reputation with the lender on its warehouse line of credit, due to the illiquidity of the mortgages Angel Oak is refusing to purchase and Priority Financial's resulting inability to repay its lender according to the terms of its warehouse line of credit. Such damages were foreseeable, are traced solely to the breach of the contract and/or are capable of exact computation, and are independent of any collateral enterprise entered into in contemplation of the contract.

# COUNT I

# BREACH OF CONTRACT

### (Against Angel Oak and DOES 1-10)

30. Plaintiff realleges and incorporates herein by reference paragraphs through 29 as though fully set forth herein.

31. Angel Oak and Priority Financial entered into the LPA. Section 6.01 of the LPA obligated Angel Oak to pay Priority Financial the Purchase Price for each mortgage loan upon the satisfaction of the Closing Conditions.

32. Priority Financial performed all its obligations under the LPA, except to the extent such obligations were excused by Angel Oak's prior breaches. Priority Financial also completed all the steps set forth in the Seller Guide to trigger a Purchase Review, and, ultimately, to require Angel Oak's purchase of the five (5) mortgage loans at issue.

33. All of the Closing Conditions set forth in Section 6.01 of the LPA occurred as to each of the five (5) home mortgages at issue, except to the extent excused.

34. Moreover, during the nine (9) months that the LPA has been in effect, Angel Oak has purchased numerous Priority Financial-originated mortgages, which have a total face value of more than $26 million. In each and every transaction, Angel Oak took the same steps leading to the closing. The course of conduct between the parties, as well as the industry norms set forth above, confirmed Angel Oak's contractual obligation to purchase loans that Priority Financial funded after receiving a Conditional Approval form that did not include any items under the "Client to Provide" section, assuming Priority Financial closed the loan and submitted final documentation thereof without any discrepancies. All those events occurred.

35. Angel Oak breached its obligation in Section 6.01 of the LPA to purchase each of the five (5) home mortgages at issue.

36. As a direct and proximate result of Angel Oak breaches, Priority Financial has suffered damages in the amount of the agreed-upon purchase price for the five (5) home mortgages at issue (which totals $8,440,960), less any amounts that Priority Financial ultimately is able to recover through its efforts to mitigate damages by selling the mortgages at prevailing market rates.

37. In addition, as a direct and proximate result of Angel Oak's breaches, Priority Financial is informed and believes, and thereon alleges, that, as a result of Angel Oak's breaches, Priority Financial will suffer harm to its credit, including, without limitation, its reputation with the lender on its warehouse line of credit, due to the illiquidity of the mortgages Angel Oak is refusing to purchase and Priority Financial's resulting inability to repay its lender according to the terms of its warehouse line of credit. Such damages were foreseeable, are traced solely to the breach of the contract and/or are capable of exact computation, and are independent of any collateral enterprise entered into in contemplation of the contract.

## COUNT II
## PROMISSORY ESTOPPEL
### (Against Angel Oak and DOES 1-10)

38. Plaintiff realleges and incorporates herein by reference paragraphs through 37 as though fully set forth herein.

39. Pursuant to the LPA, Angel Oak issued a Conditional Approval to Priority Financial as to each of the five (5) mortgage loans at issue, and none of those forms had any items under the "Client to Provide" section. According to industry norms and the parties' course of dealing, that Conditional Approval clearly meant that Angel Oak was committing to purchase the associated home mortgages once Priority Financial closed the loans and submitted the associated paperwork, assuming there were no discrepancies.

40. Priority Financial foreseeably, reasonably, and detrimentally relied on Angel Oak's false representations (i.e. the representations contained in the Conditional

Approvals for each the five (5) mortgage loans at issue that no "Client to Provide" conditions remained and the representations in the Seller Guide that Angel Oak therefore would purchase the mortgage loans by funding the five (5) home mortgage loans at issue, subject to Priority Financial submitting the required paperwork without any discrepancies).[4]

41. As a direct and proximate result of Angel Oak conduct, Priority Financial has suffered damages in the amount of the agreed-upon purchase price for the five (5) home mortgages at issue (which totals $8,440,960), less any amounts that Priority Financial ultimately is able to recover through its efforts to mitigate damages by selling the mortgages at prevailing market rates.

42. In addition, as a direct and proximate result of Angel Oak's conduct, Priority Financial is informed and believes, and thereon alleges, that, as a result of Angel Oak's breaches, Priority Financial will suffer harm to its credit, including, without limitation, its reputation with the lender on its warehouse line of credit, due to the illiquidity of the mortgages Angel Oak is refusing to purchase and Priority Financial's resulting inability to repay its lender according to the terms of its warehouse line of credit. Such damages were foreseeable, are traced solely to the breach of the contract and/or are capable of exact computation, and are independent of any collateral enterprise entered into in contemplation of the contract.

## COUNT III

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Angel Oak and DOES 1-10)

43. Plaintiff realleges and incorporates herein by reference paragraphs through 42 as though fully set forth herein.

44. Angel Oak and Priority Financial entered into the LPA.

---

[4] Such reliance is reasonable because, among other reasons, Angel Oak and Priority Financial had developed a relationship of trust over the course of conducting tens of millions of dollars in business during their 9-month relationship that included more than $26 million in transactions.

45. The LPA includes an implied covenant of good faith and fair dealing that obligates Angel Oak to act in good faith and deal fairly with Priority Financial. Angel Oak also is required to refrain from taking any deliberate act that would deprive Priority Financial of the benefits of the LPA. In particular, here, there was an agreement by Angel Oak not to purposefully refrain from issuing an Assignment and Conveyance Agreement setting forth the previously agreed terms for the purchase of the five (5) home mortgages at issue once Angel Oak completed Clearing Conditions and once Priority Financial closed those loans in reliance thereon. This covenant of good faith is based on the agreed-upon sharing of risk between the parties to the LPA, namely that Angel Oak would assume the risk of a deterioration in economic circumstances after a loan was properly funded, rather than force Priority Financial to endure such losses by blaming an external factor that was not caused, or even reasonably anticipated, by Priority Financial.

46. Priority Financial performed all its obligations under the LPA, except to the extent such obligations were excused by Angel Oak's prior breaches.

47. All of the Closing Conditions set forth in Section 6.01 of the LPA occurred as to each of the five (5) home mortgages at issue, except to the extent Angel Oak purposefully and wrongfully prevented such conditions from occurring.

48. Angel Oak breached its obligation to issue the Assignment and Conveyance Agreement as to each of the loans and to purchase each of the loans.

49. As a direct and proximate result of Angel Oak's breaches, Priority Financial has suffered damages in the amount of the agreed-upon purchase price for the five (5) home mortgages at issue (which totals $8,440,960), less any amounts that Priority Financial ultimately is able to recover through its efforts to mitigate damages by selling the mortgages at prevailing market rates.

50. In addition, as a direct and proximate result of Angel Oak's breaches, Priority Financial is informed and believes, and thereon alleges, that, as a result of Angel Oak's breaches, Priority Financial will suffer harm to its credit, including its

1  reputation with the lender on its warehouse line of credit, due to the illiquidity of the
2  mortgages Angel Oak is refusing to purchase and Priority Financial's resulting
3  inability to repay its lender according to the terms of its warehouse line of credit.
4  Such damages were foreseeable, are traced solely to the breach of the contract and/or
5  are capable of exact computation, and are independent of any collateral enterprise
6  entered into in contemplation of the contract.

## COUNT IV

## INTENTIONAL MISREPRESENTATION

### (Against Angel Oak and DOES 1-10)

51. Plaintiff realleges and incorporates herein by reference paragraphs through 50 as though fully set forth herein.

52. Angel Oak issued the five (5) Conditional Approval forms with no items in the "Client to Provide" section as set forth above.

53. The clear and unambiguous meaning of the issuance of those forms, according to industry norms and the parties' course of dealing, was that Angel Oak would purchase the five (5) home mortgages once Priority Financial funded the loans and submitted the required paperwork. In other words, these forms constituted representations, for each the five (5) mortgage loans at issue, that no "Client to Provide" conditions remained. Accordingly, pursuant to the terms of the Seller Guide, Angel Oak therefore was representing that it would purchase the mortgage loans by funding the five (5) home mortgage loans at issue, subject to Priority Financial submitting the required paperwork without any discrepancies.

54. Priority Financial is informed and believes, and thereon alleges, that Angel Oak's representations were false when made because Angel Oak always intended to cut and run if economic circumstances deteriorated prior to the time Angel Oak was scheduled to transfer the funds to purchase these five (5) home mortgages. Priority Financial is informed and believes, and thereon alleges, that Angel Oak

intended for Priority Financial to rely on these representations by funding the five (5) home mortgage loans at issue.

55. Priority Financial reasonably and detrimentally relied on Angel Oak's false representation by funding the five (5) home mortgage loans at issue.

56. As a direct and proximate result of Angel Oak's misrepresentations, Priority Financial has suffered damages in the amount of the agreed-upon purchase price for the five (5) home mortgages at issue (which totals $8,440,960), less any amounts that Priority Financial ultimately is able to recover through its efforts to mitigate damages by selling the mortgages at prevailing market rates.

57. In addition, as a direct and proximate result of Angel Oak's misrepresentations, Priority Financial is informed and believes, and thereon alleges, that, as a result of Angel Oak's breaches, Priority Financial will suffer harm to its credit, including its reputation with the lender on its warehouse line of credit, due to the illiquidity of the mortgages Angel Oak is refusing to purchase and Priority Financial's resulting inability to repay its lender according to the terms of its warehouse line of credit. Such damages were foreseeable, are traced solely to the breach of the contract and/or are capable of exact computation, and are independent of any collateral enterprise entered into in contemplation of the contract.

58. Moreover, in committing the foregoing conduct, Angel Oak acted with malice, oppression, or fraud, and in conscious disregard for the rights of Priority Financial, and with a specific intent to cause harm, thereby subjecting Angel Oak to an award of punitive damages in an amount sufficient to deter such conduct in the future.

## COUNT V

## NEGLIGENT MISREPRESENTATION

### (Against Angel Oak and DOES 1-10)

59. Plaintiff realleges and incorporates herein by reference paragraphs through 58 as though fully set forth herein.

60. Angel Oak issued the five (5) Conditional Approval forms with no items in the "Client to Provide" section as set forth above.

61. The clear and unambiguous meaning of the issuance of those forms, according to industry norms and the parties' course of dealing, was that Angel Oak would purchase the five (5) home mortgages once Priority Financial funded the loans and submitted the required paperwork. In other words, these forms constituted representations, for each the five (5) mortgage loans at issue, that no "Client to Provide" conditions remained. Accordingly, pursuant to the terms of the Seller Guide, Angel Oak therefore was representing that it would purchase the mortgage loans by funding the five (5) home mortgage loans at issue, subject to Priority Financial submitting the required paperwork without any discrepancies

62. In the event that Angel Oak's representations were not false when made, then, in the alternative, Angel Oak's representations were negligent because Angel Oak should have known that it would refuse to purchase the home mortgages after-the-fact, in the event economic circumstances deteriorated.

63. Priority Financial is informed and believes, and thereon alleges, that Angel Oak intended for Priority Financial to rely on these representations by funding the five (5) home mortgage loans at issue.

64. Priority Financial reasonably and detrimentally relied on Angel Oak's false representation by` funding the five (5) home mortgage loans at issue.

65. As a direct and proximate result of Angel Oak's misrepresentations, Priority Financial has suffered damages in the amount of the agreed-upon purchase price for the five (5) home mortgages at issue (which totals $8,440,960), less any amounts that Priority Financial ultimately is able to recover through its efforts to mitigate damages by selling the mortgages at prevailing market rates.

66. In addition, as a direct and proximate result of Angel Oak's misrepresentations, Priority Financial is informed and believes, and thereon alleges, that Priority Financial will suffer harm to its credit, including its reputation with the

lender on its warehouse line of credit, due to the illiquidity of the mortgages Angel Oak is refusing to purchase and Priority Financial's resulting inability to repay its lender according to the terms of its warehouse line of credit. Such damages were foreseeable, are traced solely to the breach of the contract and/or are capable of exact computation, and are independent of any collateral enterprise entered into in contemplation of the contract.

## PRAYER FOR RELIEF

WHEREFORE, Priority Financial prays for judgment in its favor and against Angel Oak and the Doe Defendants, and each of them, as follows:

1. For compensatory damages in the amount of $8,440,960, less any amounts that Priority Financial ultimately is able to recover through its efforts to mitigate damages by selling the mortgages at prevailing market rates;
2. For consequential damages in an amount subject to proof at trial based on harm to Priority Financial's credit resulting from Priority Financial's inability to timely repay amounts due on its warehouse line of credit;
3. For punitive damages;
4. For costs of suit;
5. For attorneys' fees to the extent available pursuant to statute;
6. For prejudgment interest at the legal rate; and
7. For any such other and further relief as the Court may deem just and appropriate.

DATED: April 30, 2020

FREEDMAN + TAITELMAN, LLP

By: *Michael A. Taitelman*
Michael A. Taitelman
Steven B.F. Stiglitz
Attorneys for Plaintiff
BM Real Estate Services, Inc. dba
Priority Financial Network

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff BM Real Estate Services, Inc. dba Priority Financial Network hereby demands a jury trial of all issues in this action that are triable of right by a jury.

DATED: April 30, 2020

FREEDMAN + TAITELMAN, LLP

By: _____
Michael A. Taitelman
Steven B.F. Stiglitz
Attorneys for Plaintiff
BM Real Estate Services, Inc. dba
Priority Financial Network